UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 10-91-GWU


GORDON STEPHENS,                                                    PLAINTIFF,


VS.                         **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


**INTRODUCTION**

Gordon Stephens brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

  1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

  2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .   .   .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Stephens, a 39-year-old man with a "limited" education, suffered from impairments related to chronic low back pain secondary to degenerative disc disease of the lumbar spine, being status post laminectomy/discectomy at L4-L5, major depression and obesity. (Tr. 12, 17). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 13-14, 17).  Since the available work was

found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 18-19).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 18).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record does not mandate an immediate award of Social Security benefits. Therefore, the court must grant the plaintiff's summary judgment motion, to the extent that it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert Sally Moore included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) a limitation concerning standing or walking to less than two hours a day; (2) the need for a sit/stand option in intervals of one hour; (3) an inability to ever balance and climb ladders, ropes or scaffolds;  (4) an inability to more than occasionally climb stairs or ramps, stoop, crouch, and crawl; (5) a need to avoid exposure to temperature extremes, concentrated vibration or industrial hazards; (6) a limitation to simple, repetitive procedures with no frequent changes in work routines; (7) an inability to perform complex or detailed problem solving, independent planning or the setting of goals; and (8) no more than occasional casual contact with the public, supervisors and coworkers.  (Tr. 50-51).

In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Tr. 51-52).  The ALJ relied upon this information to support the denial decision.  (Tr. 18).

Stephens argues that the ALJ erred because the physical factors of the hypothetical question were not consistent with the opinions of the treating and examining physicians of record.   Dr. Steven Sterneberg of the Summit Medical Group, a treating source, opined in February of 2009 that the plaintiff would be restricted to lifting no more than two pounds.  (Tr. 490).  The claimant would be restricted to standing or walking for no more than one hour a day in 10 to 12 minute intervals and could sit for no more than four hours a day in 15 minute intervals.  (Tr. 491).  Dr. Sterneberg indicated that Stephens would not be able to ever climb, balance, stoop, crouch, kneel or crawl.  (Tr. 492).  Reaching, pushing and pulling were all said to be limited.  (Id.).  The plaintiff would need to avoid exposure to heights, moving machinery, chemicals, temperature extremes, and vibration.  (Tr. 493).  When these restrictions were presented to the vocational expert, she could not identify any jobs which would remain available.  (Tr. 52-53).  Obviously, if these limitations were binding on the administration, the claimant would be considered totally disabled.

Stephens asserts that the ALJ erred in rejecting the opinion of Dr. Sterneberg.  Dr. Sterneberg indicated that his restrictions were supported by such

objective clinical findings as a large scar in the middle of the back and paralumbar muscle spasms.  (Tr. 490-494).  The ALJ found these findings inadequate to support such severe physical limitations.  (Tr. 16).  However, as noted by the plaintiff, the doctor's treatment notes do include at least some objective medical data.  An October, 2007 MRI scan of the lumbosacral spine revealed disc protrusion at L4-L5 and L5-S1.  (Tr. 435).  Muscle spasms were observed on occasion.  (Tr. 315, 476).  Thus, while Dr. Sterneberg's opinion was not binding, it does suggest the existence of more severe physical restrictions than those found by the ALJ and, so, does not support the administrative decision.

Dr. Adam Augenstein examined Stephens in May of 2009 and opined that he would be limited to sedentary level work with an inability to sit for more than a total of two hours a day and stand for more than a total of one hour a day.  (Tr. 527-528).  The plaintiff would never be able to climb and could only balance occasionally.  (Tr. 530).  The claimant would need to avoid all exposure to unprotected heights.  (Tr. 531).  The ALJ found that the doctor's opinion was not well supported by objective medical data and internally inconsistent with other findings indicated by the physician such as indications that he was able to shop and travel without assistance.  (Tr. 15-16).  Nevertheless, the opinion does not support the administrative denial decision.

Dr. John Rawlings, a non-examining medical reviewer, was the only other physician to identify specific physical restrictions.  In February of 2007, Dr. Rawlings indicated that Stephens would be limited to light level work, restricted from a full range by such non-exertional restrictions as an inability to ever climb ladders, ropes or scaffolds, an inability to more than occasionally climb ramps or stairs, stoop, crouch and crawl, and a need to avoid concentrated exposure to vibrations.  (Tr. 423-430).  The ALJ's findings were essentially consistent with this opinion.  An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Social Security Ruling 96-6p further suggests that when the examining physician is also a treating source, then the non-examiner must have seen a complete record which includes the opinion of a medical specialist in the claimant's particular impairment which contains more detailed and comprehensive information than that which was available to the treating source.  In the present action, Dr. Rawlings did not have the opportunity to see and comment upon the opinions of Dr. Sterneberg and Dr. Augenstein, each of which were entered into the record after Dr. Rawlings saw Stephens in February of 2007.  (Tr. 430).  Therefore, this opinion is insufficient to support the administrative denial decision and remand of the action is required.

Stephens raises a number of other arguments concerning the administrative denial decision with which the undersigned does not agree.

One assertion of Stephens is that the ALJ erred by failing to properly address the opinion of Dr. Michael Fletcher, a treating source.  Dr. Fletcher treated the plaintiff  for pain complaints between April and June of 2008.  (Tr. 437-461).  Dr. Fletcher did not identify specific physical limitations which would afflict the claimant. The doctor did note in April of 2008 under "Social History" that Stephens was "medically disabled."  (Tr. 446).  The ALJ noted that it was unclear whether Dr. Fletcher intended this as his opinion of the claimant's condition or was merely recording the plaintiff's own report of his status, and, so, did not credit the opinion. (Tr. 16).  Under the federal regulations, this disability statement would be an issue reserved to the Commissioner and not binding on the ALJ.  20 C.F.R. § 404.1527(e)(1).  Thus, the ALJ acted properly.

Stephens argues that the ALJ erred in evaluating his mental condition. Psychologist Terri Caudill was the only mental health professional to examine the plaintiff.  Caudill diagnosed a major depressive disorder without psychotic features. (Tr. 377).  The examiner opined that the claimant would have a "mildly" impaired ability to follow through on complex tasks, make judgments, and interact appropriately with others. (Tr. 378).  The mental factors of the hypothetical question were consistent with this opinion.  Psychologists Jane Brake (Tr. 393-394) and

Laura Cutler (Tr. 419-420) each opined that the claimant would be "moderately" limited in such areas as dealing with detailed instructions, maintaining attention and concentration, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. The ALJ's findings were essentially compatible with these opinions as well.

Stephens asserts that the ALJ erred by failing to fulfill his duty under 20 C.F.R. § 404.1512(e)(1) to clarify a discrepancy in the record by recontacting Caudill. As noted by the plaintiff, while the mental health examiner identified very modest mental restrictions, she also rated his Global Assessment of Functioning (GAF) at 50. (Tr. 377). Such a GAF suggests the existence of "serious" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. However, the court notes that the GAF rating was only a "current" one and was not intended to indicate a long-term period. (Id.). The examiner unambiguously identified only modest mental restrictions and no evidentiary conflict was indicated by the medical reviewers. Therefore, the ALJ would appear to have had sufficient evidence available to him to make a decision, negating the need to recontact Caudill.

Stephens argues that the ALJ erred by failing to properly consider whether his condition met the requirements of Section 1.04 of the Listing of Impairments concerning disorders of the spine.  This Listing section requires a claimant to show:

> 1.04  Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R.  Part 404, Subpart P, Appendix 1, § 1.04.   An MRI scan of the lumbar spine revealed no sign of disc herniation.  (Tr. 337).  While a small L5-S1 disc protrusion was noted which might narrow around the L5 nerve root, it did not clearly cause a high grade neural protrusion.  (Tr. 335).  In August of 2006, Dr. Kristen Belanger of the Saint Elizabeth Medical Center reported that the claimant

13

ambulated without difficulty and had no motor or sensory deficit.  (Tr. 304).   In October of 2006, Dr. Steven Bailey of the Mayfield Clinic reported that deep tendon reflexes were normal.  (Tr. 402).  Dr. Fletcher noted the patient to be ambulatory without assistance in May of 2008.  (Tr. 442).  While Dr. Augenstein indicated that the claimant used a cane, Stephens admitted that it was used only occasionally and had not been prescribed by a physician.  (Tr. 522).  The doctor found that strength and sensation were intact in both the upper and lower extremities.  (Tr. 523).  Under these circumstances, the court must reject Stephens's claim.

Finally, Stephens argues that the ALJ did not properly evaluate his subjective pain complaints.   Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.   In the present action, the plaintiff was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  Dr. Bailey indicated that he did not "have a good explanation for his persistent symptoms." (Tr. 402).  Dr. Augenstein opined that the

14

claimant's pain complaints seemed exaggerated when compared to his physical findings.  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Stephens's pain complaints.

The undersigned concludes that the administrative decision should be reversed and the action remanded for further consideration of Stephens's physical condition.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 5th day of January, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**